NOTE:   This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3282

JESUS G. BABAUTA, JR.,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

John S. Unpingco, The Law Office of John S. Unpingco & Associates, LLC, of Sinajana, Guam, for petitioner.

Michael J. Dierberg, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC,  for respondent.  With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.  Of counsel on the brief was Bradley R. Hansen, Attorney, Defense Commissary Agency, of Fort Lee, Virginia.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-3282

JESUS G. BABAUTA, JR.,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Petition for review of the Merit Systems Protection Board in SF0752060750-I-1.

_____

DECIDED: March 21, 2008

_____

Before RADER, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and MOORE, <u>Circuit Judge</u>.

RADER, <u>Circuit Judge</u>.

The United States Merit Systems Protection Board ("Board") sustained the United States Defense Commissary Agency's removal of Mr. Babauta from his position as store director of the commissary in Orote, Guam for the negligent performance of his duties. Because substantial evidence supports the removal of Mr. Babauta and the penalty of removal was not outrageously disproportionate to the proven charge, this court affirms.

I

Title 10 of the United States Code § 2481(b) sets for the purpose for the commissary system:

> The defense commissary system and the exchange system are intended to enhance the quality of life of members of the uniformed services, retired members, and dependents of such members, and to support military readiness, recruitment, and retention.

10 U.S.C. § 2481(b).

Consistent with this purpose, commissaries sell food and other merchandise to military personnel and their dependants at "reduced prices." 10 U.S.C. § 2481(a). Commissary stores may add a 1% surcharge, to cover "shrinkage, spoilage, and pilferage," as well as a building maintenance surcharge of 5%, but these surcharges are strictly mandated by Congress. 10 U.S.C. § 2484. Thus, the commissaries provide service personnel with the opportunity to buy goods at, or as close as possible to, cost.

Often, vendors agree to sell their product to the commissary at reduced prices to promote particular items or to resolve overstock problems. The price reduction comes in the form of a vendor credit. For example, if the vendor wants to promote a particular product that normally costs three dollars, it may agree to sell 100 units of that product for two dollars. The vendor compensates the commissary by paying the difference between the original price paid for the item and the commissary sales price. A Vendor Credit Memorandum ("VCM") memorializes these transactions. These agreements indicate the price the commissary initially paid for the item, the reduced price and quantity to be sold, and the amount the vendor agrees to pay the commissary to make up the difference.

Mr. Larry J. Bentley, Guam Zone Manager, recommended Mr. Babauta's removal because he did not follow seven VCMs. On June 12, 2006, the reviewing official, Deputy Director Owen C. Boutelle, sustained the charges for four VCM agreements involving the following products: Nestle Iced Tea with Lemon; Nestle Creamer Coffee Instant; Farmers Rice Rice CLRS; and Kraft Capri Sun Pacific Cooler, Fruit Punch, and Orange Jammers.

## II

This court must affirm any agency actions, findings, or conclusions unless they are: (1) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedure required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703 (c) (1996); Hayes v. Dep't of Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984).

Mr. Babauta contends that he did not generate the inaccurate prices, but instead the error came from the computer system that tracks purchases ("POS-TR system"). Although several witnesses testified that there had been some problems with the POS-TR system in the past, the record showed no malfunction during the precise periods when the inaccurately high prices were being charged for the four products at issue. The Board credited Deputy Director Boutelle's testimony on the functioning of the POS-TR system over the testimony of Mr. Babauta. Credibility determinations, such as these, are virtually unreviewable by this court. J.C. Equipment Corp., v. England, 360 F.3d 1311, 1315 (Fed. Cir. 2004). Accordingly, this court agrees that the record shows no malfunctioning of the POS-TR system for the products at issue during the relevant time frames.

Directive 40-23, paragraph 4-18, outlines the processing of voluntary price reductions, including VCMs. Although the plain language of the directive does not specifically state that the reduced price should be applied until the quantity of goods specified in the VCM are sold, it also says nothing that would allow Mr. Babauta to raise and lower the price for no reason as he did during the relevant time period. Directive 70-6 describes proper accounting procedures for VCMs. The Board found that this directive supports the charge against Mr. Babauta because it demonstrates inaccuracies in the required accounting. This court perceives no errors in the Board's interpretations of these directives.

This court also perceives no difficulty with the Board's findings about the motives for Mr. Babauta's removal. The Board accepted the testimony of Mr. Boutelle that Mr. Babauta's disinterest in transfer was no concern to him. Further, Mr. Boutelle noted that if he had wanted to transfer Mr. Babauta, he could have done so despite any lack of interest.

This court also detects no valid Whistleblower Protection Act ("WPA") defense. Mr. Babauta argues that his removal was retaliation for disclosures that he made which were protected under the WPA. Mr. Babauta alleges that he was removed from his position for directing a subordinate to send photos to Mr. Boutelle of rotting food in the process of being (wastefully) sent to the dump. The Board found that this disclosure receives no protection under the WPA, and even if it were, the record shows no evidence that Mr. Boutelle knew that it was Mr. Babauta that was causing the photos to be sent to him. Mr. Babauta argues that the photos were also intended to show that the items were being disposed of without the proper documentation required by agency

regulations. But no indication of the lack of documentation was sent to Mr. Boutelle along with the pictures and nothing in the pictures would suggest that the items were being disposed of without the proper documentation. The affirmative defense of retaliation under the WPA was properly rejected by the Board.

III

With regard to the suitability of the penalty, Mr. Boutelle testified that Mr. Babauta's negligent performance was serious and a violation of one of the four most important criteria upon which store managers are judged – accountability:

> . . . [W]e serve the military members, the Army, Navy, Air Force, and Marines who we as a country put in harm's way. And we – he broke that trust to them by not selling the items that we had agreed to sell for at a cheaper price to them. And he broke a trust with the companies that we deal with by them giving us money, paying us to mark the product down, and not doing it. And that is pretty substantial.

Determination of the appropriate penalty is a matter committed primarily to the sound discretion of the employing agency. Connolly v. Dep't of Justice, 766 F.2d 507, 514 (Fed. Cir. 1985) (citing Miguel v. Dep't of the Army, 727 F.2d 1081, 1083 (Fed. Cir. 1984)). The Board's decision to sustain the agency's penalty of removal must be affirmed unless the penalty is "outrageously disproportionate" to the proven offense. Bryant v. Nat'l Science Foundation, 105 F.3d 1414, 1418 (Fed. Cir. 1997); Yeschick v. Dep't of Transp., 801 F.2d 383, 384-85 (Fed. Cir. 1986). Because the penalty, though severe, is not outrageously disproportionate to the proven offence, this court affirms.

IV

Because the Board's decision sustaining the removal of Mr. Babauta from his position as store manager is supported by substantial evidence and the penalty is not outrageously disproportionate to the offence, this court affirms.

AFFIRMED